MARIE A. WOLFE

*v.*

GUSTAVUS A. SCROGGS, Sheriff, &c.

Plaintiff and her husband came from Germany in 1847, and brought with them over $1,000, the proceeds of a house and lot sold in Germany. One Stengel seems to have had an interest in the money, and they were to support him, and he came with them to this country. One Schmidt, some twelve years before the trial, married their daughter, and about the time of the marriage they let him have $500, he agreeing at the time of receiving it to support and take care of the plaintiff, her husband and Stengel. Plaintiff finally asked him, as he was getting along poorly, for the chattel mortgage in question, a mortgage on five cows for $200, and he gave it to her, and at the time she gave him $10.

*Held*, a good mortgage to her, the jury having found it to have been made in good faith for her security, for though a wife, and though her husband was bound to support her, she had certainly an interest in being supported.

The husband had made a provision for her support, and Schmidt, under his obligation to support her, had given her some security for such support.

The word "grant" in the statute (Laws of 1848, ch. 200; Laws of 1849, ch. 275) is broad enough in meaning to embrace this case.

And, per MORGAN, J., it seems that the husband may now indirectly vest all his estate in his wife, notwithstanding the provisions of section 2 of the act of 1849.

### Appeal from the Supreme Court.

ACTION to recover the possession of five cows. The complaint alleged that on the 20th April, 1859, one Joseph Schmidt being indebted to the plaintiff in the sum of $200, executed and delivered to her a chattel mortgage upon five cows conditioned to pay said $200 in one year from date; that the said sum remained wholly unpaid;

and that on the 7th of July, 1859, the defendant, as Sheriff of Erie county, by virtue of an execution, in favor of one Allen McDonald against said Joseph Schmidt, levied upon and took said cows. The plaintiff claimed a return of the property and damages for the detention.

1st. The defendant answered, denying that Schmidt was indebted to the plaintiff in the sum of $200 or any other sum, and that, therefore, the bill of sale or chattel mortgage mentioned in the complaint was made, and is without any legal, equitable, or just consideration.

2d. That at the time the chattel mortgage was made by Schmidt to the plaintiff, Schmidt was the owner in his own absolute right, of the five cows; that he was then justly indebted to Allen McDonald, in whose favor the execution mentioned in the complaint was issued, in the sum of $178.12 and interest, and that the said bill of sale or mortgage was made and executed by Schmidt, and accepted and filed by plaintiff, with the fraudulent intention and purpose of said Schmidt and the said plaintiff, to cheat and defraud said McDonald and other creditors of Schmidt out of their just dues and rights, and to defeat the defendant in the collection, or satisfaction of said execution, and that said bill of sale or mortgage is void, illegal and without just consideration.

3d. That defendant levied upon and took said cows by virtue of an execution, issued out of the Superior Court of Buffalo, on or about the 3d July, 1859, against the property of Schmidt in an action in which Allen Mc-Donald was plaintiff and said Schmidt was defendant, and that at the time, said cows were the property of Schmidt; and that on or about 9th July, the plaintiff replevied said cows and now has possession of them.

The cause was tried at the Erie Circuit, in March, 1860, before Mr. Justice Marvin, and a jury. It appeared on the trial that the plaintiff was the wife of Joseph Wolfe, having been married over thirty years; that Joseph Schmidt, the mortgagor of the cows, was her son-in-law;

that Schmidt and his wife, the plaintiff and her husband, and one Joseph Stengel, lived in the same house in the city of Buffalo. Evidence was also given to prove or tending to prove that the plaintiff and her husband came from Germany, and brought with them to this country a little over $1,000, the proceeds of a house and lot sold in the old country; that Stengel had an interest in the money and they were to support him. He came with them to this country. A portion of the money was used. Schmidt married their only daughter about twelve years before the trial; and about the time Schmidt married, the plaintiff (her husband being present) let him have $500, he agreeing when he received the money to support and take care of the plaintiff, her husband and Stengel; that Schmidt was getting along poorly, and plaintiff for a long time had been urging him to give her security, and he promised to do so; that finally she asked him to give the chattel mortgage in question and he did, and at that time she let him have $10 in money. After the mortgage was made, the cows were kept on the lot where the plaintiff lived, and were under her control. The cows were worth from $20 to $25 each. The chattel mortgage was filed in the Erie County Clerk's office, April 23, 1860. It is declared in it that Schmidt being justly indebted to Mary Anne Wolfe in the sum of $200 on contract, has for the purpose of securing the payment of the said debt, and the interest granted, &c. The provision makes it void, if the $200 are paid in one year from the date. The mortgagee is authorized to take possession at any time.

The defendant asked the court to nonsuit the plaintiff because: 1st. The mortgage should have been given to the plaintiff's husband, who lives with her, as she could not enforce its payment; 2d. The mortgage was without consideration; 3d. The money being her husband's and Stengel's, she could not take nor give personal property, and, therefore, gave nothing, she being married previous to the year 1848; 4th. The action was not begun in the

name of the proper party; 5th. The mortgage is for $200 on contract, and plaintiff could not make contracts when the money was given, her husband being alive. The motion was denied and defendants excepted. Some evidence was given by the defendant of statements made respecting the mortgage made by plaintiff on another occasion; also that the debt from Schmidt to McDonald was contracted prior to the giving of the mortgage, and some declarations of Schmidt in relation to managing his property so that it could not be taken by his creditors.

The defendant requested the court to direct the jury to find for the defendant, on the facts in the case as proved, which the court refused to do, but charged the jury, among other things, that if they believed from the evidence that Schmidt, or Schmidt and his wife, received the money upon the agreement or understanding that Schmidt should contribute to the future maintenance or support of the plaintiff, or of the plaintiff, her husband and Stengel, such agreement afforded sufficient consideration for the mortgage, and the plaintiff by virtue of it would be entitled to hold the property; but if, on the contrary, they believed the money was merely a gift to Schmidt and his wife, without any such agreement or understanding, then clearly the mortgage would be without consideration and their verdict should be for the defendant, and the defendant excepted.

The defendant asked the court to charge that if the money belonged to the husband of the plaintiff, then the mortgage was without consideration and void. The court refused so to charge, and defendant excepted.

The defendant also asked the court to charge the jury that the only legal consideration for the mortgage was the $10 paid to Schmidt at the time the mortgage was executed, and the mortgage being for $200 was, as against defendant, fraudulent and void for that reason, which the court refused to do, and the defendant excepted.

The jury found for the plaintiff. Judgment being

entered, the defendant appealed to the General Term, where the judgment was affirmed. He now appeals to this court.

*W. H. Cutler*, for the plaintiff.

*A. J. Parker*, for the defendant.

WRIGHT, J. The plaintiff was a married woman. In April, 1859, one Joseph Schmidt executed and delivered to her a chattel mortgage upon five cows and other property. The defendant, as sheriff of Erie county, in July, 1859, took the cows on an execution in favor of Allen McDonald against Schmidt. McDonald was, at the time the mortgage was executed, a simple contract creditor of Schmidt, and, although it was not proved, that he subsequently recovered a judgment for the amount of his debt, or that the execution issued to the defendant, by virtue of which he levied upon and took the cows, had any judgment to support it, the fact seems not to have been questioned, but inferentially conceded, at least, by the plaintiff in her complaint. Without such judgment, the defendant was in no position to raise any question as to the validity of the mortgage. But assuming that he was in a position to raise the question, that the mortgage was without consideration, and that it was fraudulent as to the creditors of Schmidt, how, then, stands the case? The jury passed upon the latter question, under instructions not complained of, and their verdict is conclusive as to the good faith of the transaction. That question is, therefore, out of the case. Was there any or sufficient consideration for the mortgage? The question arises upon exceptions to a portion of the charge of the judge. The evidence given proved, or tended to prove, this state of facts. The plaintiff was a married woman at the time she took the mortgage, and so continued to the trial. She and her husband came from Germany, in 1847, and brought with them over $1,000, the proceeds of a house and lot sold in Germany. One Stengel seems to have had an interest in the money,

and they were to support him, and he came with them to
this country. About twelve years before the trial, Schmidt
married their only daughter, and, about the time of their
marriage, they let him have $500, he agreeing, when he
received the money, to support and take care of the plain-
tiff, her husband, and Stengel. Schmidt was getting along
poorly for some time previous to giving the mortgage, and
the plaintiff had been urging him for some security. He
said it was right that he should, and that he would give it.
She finally asked him for the chattel mortgage in question,
and he gave it, and at the time she let him have $10.

Upon this proof, substantially, the judge refused to
charge the jury to find for the defendant, but charged,
among other things, that if they believed from the evi-
dence that Schmidt, or Schmidt and his wife, received the
money upon the agreement, or understanding that Schmidt
should contribute to the future maintenance or support of
the plaintiff, or of the plaintiff, her husband, and Stengel,
such agreement afforded sufficient consideration for the
mortgage. This, I think, was not error. Schmidt receives
some $500 (let it be conceded, from the husband of the
plaintiff), upon an agreement that he, Schmidt, would sup-
port or contribute to the future support and maintenance
of the plaintiff, her husband, and Stengel. The plaintiff
desired security, and Schmidt gave to her alone the chattel
mortgage, her husband being still living. I cannot doubt
there was a good consideration for the mortgage. Concede
that the jury found the contract to have been made with
the husband; the plaintiff had an interest in the contract.
Though a wife, and though her husband was bound to sup-
port her, she had certainly an interest in being supported.
The husband had made a provision for her support, and
this person who had come under obligation to support her,
gives her some security for such support. As was perti-
nently asked by the learned judge who delivered the
opinion in the court below, suppose he had given a mort-
gage upon real estate, running directly to her, and in

which all the facts were recited, can any one doubt that such mortgage would be upheld? I think not.

If it can be said that the motion for a nonsuit raised the question of the capacity of the plaintiff, a married woman, to take the mortgage and to maintain the action in her name alone, I am of the opinion that it was correctly disposed of. The statute "For the more effectual protection of the property of married women" (Laws of 1848, ch. 200, id. 1849, ch. 275), declares that any married female may take, by gift or grant, from any person other than her husband, and hold to her sole and separate use, real and personal property; and, I concur with the Supreme Court, that the word "grant" is broad enough in meaning to embrace this case. The provisions of the Code disposed of the questions as to the capacity of the plaintiff to sue. It is provided that the action must be prosecuted in the name of the real party in interest, and that where the action concerns the separate property of a married woman, she may sue alone. Code, §§ 111, 114.

The judgment should be affirmed.

MORGAN, J. It is made a question in this case by the appellant's counsel whether the plaintiff, being a married woman, was competent to take a personal mortgage in her own name, except it related to her separate property.

Since the statute of 1848 and 1849, her capacity to take by gift, grant or devise from any person other than her husband, real and personal property, and hold it to her separate use, with the like effect as if she were unmarried, has been repeatedly decided, and indeed could not be questioned under the provisions of the act of 1849. Laws of 1849, p. 528, § 2; *Knapp* v. *Smith*, 27 N. Y., 277.

I think the language of that section has been misconceived in some of the cases by want of attention to the common law disability of man and wife to contract with each other. It was always competent for the husband to

transfer his property to a third person, and for the wife to take title to such property through such third person instead of the husband. But the marital rights of the husband would then attach, and he might again reduce her personal property to his possession and control, unless a court of equity interfered to restrain him.

Now, by the statutes of 1848 and 1849, his marital rights are swept away; and it is no longer in the power of the husband or his creditors, except in cases of fraud, to seize upon property thus transferred as the property of the husband.

The husband may now indirectly vest all his estate in his wife, notwithstanding the provisions of section two of the act of 1849.

When she takes title to property from a third person she does not take it from her husband within the meaning of that section, although he once owned it, and transferred the legal title to such third person for the sole purpose of ultimately vesting it in his wife. There is no longer any legal objections to the wife's acquiring and retaining the title to her husband's property, except the common law liability of the one to convey or transfer such property to the other, which disability is still retained by the statutes of this State.

Another objection is made that there is no consideration as between the parties to the mortgage.

It is admitted, however, that the plaintiff's husband had the right to take such a mortgage to secure the repayment of the moneys which Smith, his son-in-law, had obtained under an agreement to support and maintain the plaintiff and her husband.

As the execution was against Smith, and not against the plaintiff's husband, what possible interest can the defendant have in such a question?

The title did not come from the plaintiff's husband to his wife, but from Smith; and whether the mortgage was taken to the one or to the other was a matter of no sort

·of consequence to Smith's creditors. Nor was there any impropriety in the husband's consenting to have the legal title vested in his wife in such a case. No one but the husband's creditors can impeach such an arrangement.

The only questions of difficulty in this case were questions of fact, and they are not open to review in this court.

If there was a debt due from Smith to the plaintiff, or to the plaintiff's husband, which the mortgage was intended to secure; and if the transaction was *bona fide* to secure such debt without any intention to defraud the creditors of Smith, there is no legal objection to the recovery, and the judgment should be affirmed.

All concur.

Judgment affirmed.